IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CRIMINAL NO. 07-689-5 |
| JOHN MALLOY | |

**MEMORANDUM OPINION**

Defendant John Malloy, a 45-year-old inmate incarcerated at FCI Allenwood Medium, has filed a *pro se* letter,[1] which the Court construes as a motion for reconsideration of the Court's previous denial of compassionate release. Malloy has also filed a second *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[2] As in his first motion for compassionate release, Malloy re-raises arguments that his medical conditions place him at greater risk of severe illness from COVID-19; that he faces a heightened risk of reinfection at FCI Allenwood Medium; and that he has demonstrated significant post-sentence rehabilitation. Malloy newly raises, among other arguments challenging his original sentence, that his firearms-related charges were multiplicious, and further that he is eligible for a two-level reduction to his calculated offense level under Amendment 782 to the United States Sentencing Guidelines.[3] Finally, Malloy has filed a petition to unseal the transcripts from his sentencing hearing, for purposes of identifying information supporting his arguments.[4] Upon consideration of the parties' submissions and the available record, and for the reasons below, the Court will deny Malloy's motions at this time.

---

[1] Def.'s Mot. Reconsideration [Doc. No. 757].

[2] Def.'s Second Mot. Compassionate Release [Doc. No. 766].

[3] USSG, app. C, amend. 782 (eff. Nov. 1, 2014).

[4] Def.'s Pet. Unseal Tr. [Doc. No. 771].

I.  BACKGROUND

A.  Factual Background

On November 7, 2007, a grand jury returned a 43-count indictment charging Malloy and ten other men with conspiracy to commit pharmacy burglary; pharmacy burglary; knowingly possessing controlled substances with intent to distribute and aiding and abetting; and conspiracy to deal in firearms without a license. These charges stemmed from Malloy's participation in a large-scale crime ring that burglarized pharmacy and drug stores[5] as well as Ackley and Son Sports Shop, a federally licensed firearms dealer in Westfield, Pennsylvania.[6] Overall, this conspiracy was responsible for 47 pharmacy burglaries and attempted burglaries across three states. Thousands of controlled substances were stolen and sold.[7] Malloy's involvement began near the end of the conspiracy. He was found to have participated in five burglaries of pharmacies and the burglary of the gun store between November 2004 and February 2005.[8]

On February 21, 2007, Malloy was sentenced by the Honorable John E. Jones in the United States District Court for the Middle District of Pennsylvania to a term of 120 months of imprisonment for possession and disposition of stolen firearms, in violation of 18 U.S.C. § 922(g), in connection with the burglary of Ackley and Son Sports Shop. Malloy has served this entire sentence.[9]

---

[5] Many of the selected pharmacies were of the "mom and pop" variety due to the low-level security systems found at those locations.

[6] This burglary resulted in 188 firearms being stolen, transported, and sold after Malloy and other co-conspirators ground off serial numbers on the weapons.

[7] The substances stolen include, but are not limited to, oxycodone, amphetamine, and hydromorphone, which are Schedule II controlled substances; hydrocodone and other Schedule III controlled substances; and alprazolam, diazepam, lorazepam, and zolpidem, which are Schedule IV controlled substances.

[8] The indictment charged Malloy with six burglaries and one attempted burglary. After trial, he was found guilty of five burglaries and acquitted of one count of burglary and attempted burglary.

[9] Gov't Opp'n First Mot. Compassionate Release 5 [Doc. No. 741].

On January 12, 2009, a jury in the Eastern District of Pennsylvania found Malloy guilty of eleven counts arising from the pharmacy burglaries and distribution of controlled substances, and one count of conspiracy to deal in firearms without a license in violation of 18 U.S.C. § 371. On June 4, 2009, Malloy was sentenced by the Honorable James Knoll Gardner to a sentence of 240 months of imprisonment, to run concurrently with his 120-month sentence.[10] This sentence was a substantial departure from the sentencing guideline range of 324 to 405 months of imprisonment.[11] Malloy has now served approximately 218 months of the 240-month term of imprisonment.[12] His minimum release date, with good time credit, is March 13, 2025.[13]

B. Procedural Background

On August 18, 2020, Malloy filed his first *pro se* motion for compassionate release, which was amended and refiled six days later, on August 24, 2020.[14] On September 4, 2020, the government filed its opposition to Malloy's motion.[15] Malloy later filed a motion for appointment of counsel, which the Court granted.[16] On November 2, 2020, the Office of the Federal Defenders filed a reply brief, followed by a supplemental letter providing context about the COVID-19 outbreak at FCI Allenwood Medium.[17] On January 19, 2021, the government

---

[10] The case was reassigned to this Court upon Judge Gardner's retirement. Ord., June 5, 2017 (Tucker, C.J.) [Doc. No. 680]. Malloy's total maximum sentence for all counts was calculated to be 215 years of imprisonment. The Guideline range for imprisonment was calculated at 324–405 months of imprisonment.

[11] Gov't Sentencing Mem. [Doc. No. 414].

[12] *See* Gov't Opp'n Reconsideration 1 n.1 [Doc. No. 758] (estimating 198 months served as of January 23, 2022).

[13] *Id.*

[14] Def.'s First Mot. Compassionate Release [Doc. No. 737]; Def.'s First Am. Mot. Compassionate Release [Doc. No. 739].

[15] Gov't Opp'n First Mot. Compassionate Release [Doc. No. 741].

[16] Mot. Appoint Counsel [Doc. No. 746]; Ord., Oct. 14, 2020 [Doc. No. 748].

[17] Def.'s Reply Supp. First Mot. Compassionate Release [Doc. No. 750]; Letter from Katrina Young, Assistant Fed. Def., Fed. Cmty. Def. Off. E.D. Pa. [Doc. No. 752].

filed a supplemental response with permission of the Court.[18]

On March 16, 2021, upon careful review of Malloy's motion, the government's response, Malloy's counseled reply, and the available documents of record, the Court denied Malloy's motion based on findings that: (1) Malloy had a relatively low risk of reinfection given a prior positive COVID-19 test result (with an asymptomatic presentation) in December 2020; and (2) Malloy's commendable efforts to demonstrate post-sentence rehabilitation were outweighed by the seriousness of Malloy's crimes and the fact that Malloy's sentence was already a substantial downward departure from the guideline range.[19]

On January 13, 2022, Malloy filed a *pro se* letter asking the Court to "re-look at [his] motion for compassionate release," which the Court construes as a motion for reconsideration of the Court's previous denial.[20] On January 23, 2022, the government filed its response in opposition to Malloy's request for reconsideration.[21] On February 4, 2022, Malloy filed a *pro se* letter in reply.[22]

On October 25, 2022, Malloy filed a second motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which also raised arguments in support of reconsideration.[23] On October 27, 2022, the government filed its opposition.[24] On November 8, 2022, Malloy filed a *pro se* "Response to Government's Opposition to Judicial Reconsideration of Compassionat [sic] Release Motion and Addendum," which the Court construes as both a reply in support of

---

[18] Doc. No. 754.

[19] Ord., Mar. 16, 2021 [Doc. No. 755].

[20] Def.'s Mot. Reconsideration [Doc. No. 757].

[21] Gov't Opp'n Reconsideration [Doc. No. 758].

[22] Def.'s Letter Reply Supp. Reconsideration [Doc. No. 761].

[23] Def.'s Second Mot. Compassionate Release 1 [Doc. No. 766] ("Petitioner requests the court consider this motion . . . as either a reconsideration or new motion . . . .").

[24] Gov't Opp'n Second Mot. Compassionate Release [Doc. No. 768].

Malloy's second motion for compassionate release and a sur-reply in support of Malloy's motion for reconsideration.[25]

On September 29, 2023, Malloy filed a motion to unseal the transcripts from his sentencing hearing for purposes of identifying information supporting his compassionate release and reconsideration motions.[26] On October 11, 2023, the Court issued a show cause order compelling the government to provide reasons why the transcripts from Malloy's trial and sentencing should not be unsealed.[27] On October 14, 2023, the government filed its opposition to Malloy's motion to unseal.

The Court will address each of Malloy's motions in turn.

## II. LEGAL STANDARD

A motion for reconsideration should be granted only where the moving party shows that at least one of the following grounds is present: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[28] "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly."[29] Moreover, "[a] motion for reconsideration is not properly grounded on a request that a court consider repetitive arguments that have been fully examined by the court."[30]

---

[25] Def.'s Reply Supp. Compassionate Release [Doc. No. 769].

[26] Def.'s Pet. Unseal Tr. [Doc. No. 771].

[27] Ord., Oct. 11, 2023 [Doc. No. 772].

[28] *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

[29] *Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

[30] *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F.Supp.2d 394, 398 (E.D. Pa. 2002) (citation omitted).

When evaluating the merits of a compassionate release motion, this Court generally "may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35."[31] Section 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, is one such statute that authorizes modifications to a sentence previously imposed. It grants prisoners "the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf."[32]

Under subsection (c)(1)(A)(i), once a defendant has satisfied the exhaustion requirement, the sentencing court may reduce his or her sentence "if it finds that extraordinary and compelling reasons warrant such a reduction."[33] Even if such reasons exist, the "district court must 'consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable.'"[34] Further, "all sentence reductions must be 'consistent with applicable policy statements issued by the Sentencing Commission.'"[35] Accordingly, a court may grant a defendant's motion if (1) "extraordinary and compelling reasons" exist, (2) a reduction aligns with relevant Sentencing

---

[31] *United States v. Van Sickle*, No. 18-250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003)).

[32] *United States v. Hill*, 19-38, 2020 WL 2542725, at *1 (D. Conn. May 19, 2020) (citing *United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. April 9, 2020)). "The exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all administrative appeal rights with respect to that denial, or (2) that the warden of the facility took no action on his or her request for the filing of a compassionate-release motion within 30 days of receiving it." *United States v. Cassidy*, No. 17-116, 2020 WL 1969303, at *2 (W.D.N.Y. Apr. 24, 2020) (citing 18 U.S.C. § 3582 (c)(1)(A)(i)).

[33] *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)) (alterations omitted).

[34] *Pawlowski*, 967 F.3d at 329 (quoting 18 U.S.C. § 3582(c)(1)(A)) (alterations omitted).

[35] *United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[T]he Commission has not yet promulgated a post–First Step Act policy statement describing what should be extraordinary and compelling in the context of prisoner-initiated motions." *Id*.

Commission policy statements, and (3) the § 3553(a) factors support a reduction.[36]

## III. DISCUSSION

### A. The Available Record Does Not Support a Grant of Malloy's Motion for Reconsideration or Second Motion for Compassionate Release.

1. *Exhaustion*

On May 14, 2020, Malloy submitted a request for compassionate release to the Warden of FCI Allenwood Medium. On June 5, 2020, the Warden denied the request for release. It is therefore undisputed that Malloy exhausted his administrative remedies with respect to his first motion (as amended and refiled on August 24, 2020). Accordingly, the Court will evaluate Malloy's motion for reconsideration of the Court's first ruling on the merits, including whether he has presented new evidence or has identified clear error. Malloy has not, however, proven exhaustion with respect to his second motion filed on October 25, 2022, but even if he had[37]—as discussed in further detail below—the relevant factors weigh against release, and the challenges to his underlying charges and sentencing guideline calculations are procedurally barred.

2. *COVID-19 and Medical Conditions*

Malloy's motion for reconsideration—and his subsequent briefings in support of reconsideration—re-assert several arguments he made in his first motion for compassionate release. He cites concerns of COVID-19 reinfection at FCI Allenwood Medium because of subsequent outbreaks and the emergence of "multiple variants" of the virus "as we enter the winter months and beyond."[38] He raises continuing concerns about his health, including suspected "long COVID symptoms" and shortness of breath, and he submits that he has gained

---

[36] *Andrews*, 12 F.4th at 258.

[37] *See United States v. Salley*, No. 19-688, 2023 WL 1862289, at *1 (E.D. Pa. Feb. 9, 2023) (denying second compassionate release motion on the merits despite defendant's failure to exhaust administrative remedies).

[38] Def.'s Second Mot. Compassionate Release 3 [Doc. No. 766]; Def.'s Mot. Reconsideration [Doc. No. 757].

7

weight and now has a higher BMI.[39] He submits, as before, that he continues to suffer from high blood pressure, hypothyroidism, sleep apnea, chronic anxiety and depression, pre-diabetes, and obesity.[40] And he cites this Court's prior Order, which found—with the government's concession—that Malloy was eligible for consideration for compassionate release because he presented at least one risk factor (obesity) recognized by the Centers for Disease Control and Prevention ("CDC") as presenting a risk of severe COVID-19 disease.[41]

Malloy is correct that the Court found his obesity and high Body Mass Index ("BMI"), in combination with the threat of infection at FCI Allenwood Medium, to be sufficiently extraordinary and compelling for him to be eligible for compassionate release under section 3582(c)(1)(A)(i).[42] However, the Court went on to find that Malloy's risk of reinfection was mitigated because he had previously received a positive COVID-19 test within the previous six months, reported no symptoms other than one day of congestion, and was fully recovered days later.[43] The Court held that Malloy's natural immunity—in addition to the lack of scientific consensus at that time regarding the risk of reinfection—ultimately weighed against release.[44]

Within a year after the Court denied Malloy's first motion, he was vaccinated.[45] He received his first dose of the Moderna COVID-19 vaccine on May 4, 2021, his second dose on

---

[39] Def.'s Mot. Reconsideration [Doc. No. 757] (representing a BMI "closer to 50" as of January 2022); Gov't Opp'n Reconsideration 3 [Doc. No. 758] ("Malloy's weight has in fact increased, from 327 pounds . . . to 346.8 pounds).

[40] Def.'s Reply Supp. Compassionate Release 1 [Doc. No. 769].

[41] *Id.*; Ord., Mar. 16, 2021, at 5 [Doc. No. 755] (quoting Gov't Suppl. Resp. Compassionate Release 1 [Doc. No. 754]).

[42] Ord., Mar. 16, 2021, at 5.

[43] *Id.* at 5–6.

[44] *Id.* at 6.

[45] Gov't Opp'n Reconsideration, Ex. A, at ECF pg. 45 [Doc. No. 759]. The Court impounded the government's Exhibit A, which contains Malloy's BOP medical records, to protect his privacy interests. Ord., Apr. 6, 2022 [Doc. No. 763]. The Court cites only those facts from the records that are essential to the disposition of this case.

June 2, 2021, and a booster shot on December 16, 2021.[46]

The Court acknowledges that there is some evidence of changed circumstances since Malloy filed his motion for reconsideration in January 2022 and his second motion for compassionate release in October 2022. For example, the government submitted on January 23, 2022 that only 47 out of 1,146 inmates at FCI Allenwood Medium had tested positive for COVID-19, with no COVID-related deaths.[47] But recent data from the BOP shows remarkably higher figures: As of October 19, 2023, there have been 589 positive tests among 1,145 inmates at FCI Allenwood Medium—*i.e.*, potentially the majority of inmates housed there.[48] However, the same dataset indicates that 453 inmates have "Recovered;" there continue to be no COVID-related deaths; and, in total, 2,603 inmates are reported to have been vaccinated.[49]

The Court also considers findings from other district courts that have recently evaluated compassionate release motions filed by inmates at FCI Allenwood Medium. One district court observed this year, as have others in that district, "that the pandemic has rendered the conditions of confinement far harsher and more punitive than . . . anticipated" for inmates housed in a medium-security unit at Allenwood, and many have "experienced repeated lockdowns, extended periods without visitation from family and legal counsel, and severely restricted movement."[50] Malloy's submissions are consistent with these observations: He stated in his letter motion, for

---

[46] Gov't Opp'n Reconsideration, Ex. A, at ECF pg. 45 [Doc. No. 759].

[47] Gov't Opp'n Reconsideration 3 [Doc. No. 758].

[48] Fed. Bureau Prisons, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html [https://perma.cc/Q442-9XC2] (last accessed Oct. 19, 2023). The dataset indicates that "[t]he number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once." *Id.*

[49] *Id.*

[50] *United States v. Snype*, No. 02-cr-939, 2023 WL 4622870, at *9 (S.D.N.Y. July 19, 2023) (quotation marks and modifications omitted).

9

example, that his "unit is currently on lockdown due to COVID."[51] A note in his medical records from January 2022 indicates that an x-ray due date was "extend[ed] . . . due to COVID-19 quarantine."[52] Nine months later, Malloy noted in his second motion for compassionate release that "FCI Allenwood is still in restrictive isolation as of October 14, 2022."[53]

On the other hand, as one district court very recently observed, FCI Allenwood Medium "is currently operating at COVID-19 operational level 1, the lowest COVID-19 threat level"[54]—which, to this Court's understanding, remains true as of this writing.[55] A Third Circuit panel recently held that the district court did not abuse its discretion in denying an inmate's motion for compassionate release, in part because the facility at which he was housed was operating at Level 1 and the defendant was fully vaccinated and had received a booster.[56] However, the Third Circuit noted that FCI McDowell, the facility at which the defendant was housed in that case, had a "negligible" rate of infections at that time, with "0 confirmed inmate COVID-19 cases and 1 confirmed staff case."[57] As an illustrative example of what appears to be a widespread increase in positive tests at BOP facilities throughout the country, the BOP now reports—a mere four months after the Third Circuit panel's decision—that 412 inmates at FCI McDowell have now tested positive, *i.e.*, nearly a third of inmates tested.[58]

---

[51] Def.'s Mot. Reconsideration [Doc. No. 757].

[52] Gov't Opp'n Reconsideration, Ex. A, at ECF pg. 2 [Doc. No. 759].

[53] Def.'s Second Mot. Compassionate Release 3 [Doc. No. 766].

[54] *United States v. Gonzales*, No. 15-cr-6085, 2023 WL 6386139, at *2 (W.D.N.Y. Oct. 2, 2023).

[55] *See* Fed. Bureau Prisons, *FCI Allenwood Medium*, https://www.bop.gov/locations/institutions/alm [https://perma.cc/86HE-973K] (last accessed Oct. 19, 2023); Fed. Bureau Prisons, *COVID-19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp [https://perma.cc/P6XZ-YTKJ] (last accessed Oct. 19, 2023).

[56] *United States v. Redman*, No. 23-1121, 2023 WL 3721206, at *2 (3d Cir. May 30, 2023).

[57] *Id.*

[58] Fed. Bureau Prisons, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html [https://perma.cc/Q442-9XC2] (last accessed Oct. 19, 2023).

These latest figures give the Court serious pause, but they do not on their own support a grant of compassionate release. The Court previously held in March 2021, in denying Malloy's first motion, that the risk of contracting COVID-19 at FCI Allenwood Medium "exceed[ed] mere speculation . . . but the decrease in . . . positive cases [was] encouraging."[59] Given the recent upward trends, Malloy's current risk of reinfection may, at a minimum, exceed mere speculation—or at worst, the risk may be even higher than before. But to the extent that Malloy now suggests he has an increased risk of serious complications if he were to contract COVID-19 (*e.g.*, because he has since gained more weight and has a higher BMI), those arguments are surely mitigated to a considerable degree by Malloy's vaccination status, as countless circuit and district courts have held over the last several years.[60]

In any event, these are not the only factors the Court is required to consider in evaluating a compassionate release motion. Even assuming[61] that Malloy has established some degree of medical risk constituting an "extraordinary and compelling reason" supporting a grant of compassionate release, there are other factors the Court must consider, which, as before, it finds weigh against Malloy's release.

---

[59] Ord., Mar. 16, 2021, at 4 [Doc. No. 755].

[60] *See, e.g.*, *United States v. Holland*, No. 23-2044, 2023 WL 6836998 (3d Cir. Oct. 17, 2023) (panel finding no abuse of discretion by the district court in denying compassionate release because "effective vaccines have reduced the risk of serious illness posed by COVID-19" and "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release") (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Williams*, No. 19-cr-71, 2021 WL 4860170, at *3 (N.D. Ind. Oct. 19, 2021) ("An overwhelming amount of district courts across the country have held that being fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied compassionate release.").

[61] It is unclear whether Malloy has received additional booster shots or whether he has suffered from other intervening medical complications, because the Court has not received Malloy's updated BOP medical records post-dating January 2022. *But see United States v. Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (rejecting arguments concerning the "waning immunity and the unknown efficacy of the booster shot"); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ([W]ith access to the vaccine, an inmate faces largely the same risk from COVID-19 as those who are not incarcerated.").

3. *§ 3553(a) Factors*

In addition to extraordinary and compelling reasons supporting release, district courts must also consider whether a defendant poses a danger to the community[62] and whether the factors set forth in § 3553(a), to the extent that they are applicable, favor a sentence reduction.[63]

The Court previously held that that the § 3553(a) factors[64] weighed against a reduction of Malloy's sentence. However, as the Court explained in its March 2021 Order, the Court's evaluation of Malloy's history and characteristics is not frozen in time, and over two years have passed since the Court made that determination.[65] Any review of the § 3553(a) factors must consider the "most up-to-date picture" of the defendant's "history and characteristics," including evidence of rehabilitation.[66]

---

[62] Under the Sentencing Commission's policy statement, § 3142(g) instructs the Court, when deciding whether release is warranted, to "weigh [the defendant's] danger to the community includ[ing] 'the nature and circumstances of the offense charged,' 'the history and characteristics of the person,' including 'the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history,' and 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'" *United States v. Rodriguez*, 451 F. Supp. 3d 392, 406 (E.D. Pa. 2020) (quoting 18 U.S.C. § 3142(g)).

[63] *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

[64] The applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

*Rodriguez*, 451 F. Supp. at 406–07 (quoting 18 U.S.C. § 3553(a)).

[65] Ord., Mar. 16, 2021 [Doc. No. 755].

[66] *Pepper v. United States*, 562 U.S. 476, 491–92 (2011); *see also United States v. Parker*, 461 F. Supp. 3d 966,

The Court explained in 2021 that Malloy had "shown extraordinary post-sentence rehabilitation during his lengthy incarceration," with "only one nonviolent disciplinary infraction" since entering federal prison in 2005.[67] The Court observed that Malloy had received his GED in 2007—a significant accomplishment given that he had only completed the eighth grade when he was first incarcerated—and he had completed over 20 additional educational and vocational courses, including automotive service technician classes, parenting classes, and courses aimed at addressing his criminal behavior and thinking patterns.[68] Members of the prison staff acknowledged Malloy's strong work ethic and commitment to building skills that would enable him to benefit the community upon release, and Malloy received numerous commendations from his supervisors and correctional officers.[69]

In subsequent correspondence to the Court, Malloy has continued to express remorse for his mistakes and a desire to move forward and become a productive member of society. He represents that, as of November 2022, he has maintained employment while incarcerated, and, most remarkably, he submits that he has not received any additional disciplinary infractions.[70] The Court previously commended Malloy's extraordinary efforts to rehabilitate himself, and it does so again now.

---

981–82 (C.D. Cal. 2020). Although Congress has provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), "rehabilitation may be considered with other factors." *Rodriguez*, 451 F. Supp. 3d at 405 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)); *see also* Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 83, 103 (2019) ("Congress no doubt limited the ability of rehabilitation *alone* to constitute extraordinary circumstances, so that sentencing courts could not use it as a full and direct substitute for the abolished parole system. Congress, however, contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases. Indeed, the use of the modifier 'alone' signifies that rehabilitation could be used in tandem with other factors to justify a reduction.").

[67] Ord., Mar. 16, 2021, at 7 [Doc. No. 755].

[68] *Id.* at 8 (citing PSR ¶¶ 169–70; Def.'s First Mot. Compassionate Release 44–52 [Doc. No. 737]).

[69] Ord., Mar. 16, 2021, at 8 [Doc. No. 755] (citing Def.'s First Mot. Compassionate Release 44–52 [Doc. No. 737]).

[70] Def.'s Reply Supp. Compassionate Release [Doc. No. 769].

However, as to the § 3553(a)(2) factor, "the need for a sentence must be sufficient, but not greater than necessary, to serve the purpose of 'just punishment, deterrence, protection of the public, and rehabilitation.'"[71] The Court ultimately denied Malloy's first motion because of the seriousness of his crimes—burglaries of multiple pharmacies and a firearm store resulting in the dissemination of large quantities of drugs and guns into the community—and because his 240-month sentence was already a substantial downward departure from the guideline range.[72] The Court held that Malloy's sentence reflected the seriousness of Malloy's crimes, promoted respect for the law, served as just punishment, and demonstrated appropriate general and specific deterrence for future burglary crimes.[73]

Malloy has not identified an intervening change in law or new evidence which would alter the Court's prior conclusions.[74] Nor has he shown that applying that decision would be clearly erroneous or work a manifest injustice. The § 3553(a) sentencing factors continue to weigh against release. As the government notes, Malloy will likely be released in less than two years, at 46 years old, with ample opportunity to reintegrate himself as a family member and productive member of the community. The Court encourages him to continue his commendable efforts to rehabilitate himself until his release, but it will not conclude that his sentence is "not greater than necessary" at this time.

---

[71] *United States v. Regas*, No. 91-57, 2020 WL 2926457, at *5 (D. Nev. June 3, 2020) (quoting *Dean v. United States*, 581 U.S. 62, 67 (2017)); *see also Parker*, 461 F. Supp. 3d at 983.

[72] Ord., Mar. 16, 2021, at 8–9 [Doc. No. 755].

[73] *Id.*

[74] Malloy cites Amendment 782 to the United States Sentencing Guidelines, effective November 1, 2014, as providing a new basis for a two-level reduction to his calculated offense level. But as the government points out, even applying the amendment, Malloy's 240-month sentence represents a downward departure from the bottom end of the recalculated guideline range. Moreover, as discussed in further detail below, Malloy's argument is not properly raised in a motion for compassionate release.

### B. A Motion for Compassionate Release Is an Inappropriate Vehicle for Malloy's Multiplicity Challenges.

In his second motion for compassionate release, Malloy newly raises collateral attacks on his underlying charges and sentencing guideline calculations. First, he argues that his charge for possession and disposition of stolen firearms, in violation of 18 U.S.C. § 922(g), and his separate charge for conspiracy to deal in firearms without a license, in violation of 18 U.S.C. § 371, were multiplicious, and that he was therefore sentenced for the same relevant conduct by two different district courts.[75] Second, he asserts that, under Amendment 782 to the United States Sentencing Guidelines,[76] he is now eligible for a two-level reduction to his calculated offense level. Third, he challenges the two-point enhancement the Court applied to his Base Offense Level pursuant to § 2D1.1(b)(1)[77] because, he argues, the enhancement arose from a co-defendant who "received drugs in exchange for his portion of the stolen guns," and "[w]hat [the co-defendant] did with his proceeds from the burglary without [Malloy's] awareness is not relevant conduct of [Malloy]."[78]

The Court agrees with the government that these arguments are inappropriate in a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Several panels for the Third Circuit have recently held that claims of sentencing errors (or erroneous convictions) can only be raised in a § 2255 motion for habeas relief.[79] As federal appellate courts have unanimously

---

[75] Along this vein, Malloy argues that had his separate indictments in the Middle and Eastern Districts of Pennsylvania been consolidated into one indictment for a single trial and sentencing, he would have been eligible for a reduction of five months and fourteen days at the bottom end of his guideline range because his two firearm-related charges would have been considered together.

[76] USSG, app. C, amend. 782 (eff. Nov. 1, 2014).

[77] USSG § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by **2** levels.").

[78] Def.'s Second Mot. Compassionate Release 3 [Doc. No. 766].

[79] *United States v. Holmes*, No. 22-1772, 2022 WL 3657180, at *2 (3d Cir. Aug. 25, 2022) (per curiam) ("[T]o the extent that Holmes argues that he is entitled to compassionate release because of alleged sentencing errors, he essentially presents another challenge to the validity of his sentences, and such challenges are typically brought under 28 U.S.C. § 2255 instead."); *United States v. Wilson*, No. 22-2606, 2022 WL 15431188, at *2 n.1 (3d Cir.

concluded, the statutory avenue for seeking compassionate release on the basis of "extraordinary and compelling" reasons cannot be read "to provide an end run around habeas."[80] Justice Easterbrook recently summarized this principle as follows:

> In other words, the sort of "extraordinary and compelling" circumstance that § 3582(c)(1) addresses is some new fact about an inmate's health or family status, or an equivalent post-conviction development, not a purely legal contention for which statutes specify other avenues of relief—avenues with distinct requirements, such as the time limits in § 2255(f) or the need for a declaration by the Sentencing Commission that a revision to a Guideline applies retroactively.[81]

Other district courts in this circuit have applied this well-reasoned rule, including in rejecting challenges to offense level enhancements concerning firearms and drug trafficking.[82] The Court will dismiss these arguments, without prejudice to Malloy filing a § 2255 motion.

### C. The Potential Harm from Unsealing the Trial and Sentencing Transcripts Outweighs Malloy's Presumption of Access.

Finally, Malloy has filed a motion requesting that the transcripts from his June 4, 2009

---

Oct. 27, 2022) (per curiam) ("§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity."); *United States v. Henderson*, 858 F. App'x 466, 469 n.2 (3d Cir. 2021) (per curiam) (holding that defendant's challenge to his classification as a career offender under the First Step Act could not qualify as an "extraordinary and compelling reason" for compassionate release); *see also Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) ("Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences.").

[80] *United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022) (en banc); *see also, e.g.*, *United States v. Jenkins*, 50 F.4th 1185, 1201 (D.C. Cir. 2022) ("We must therefore interpret the compassionate-release statute in light of this reticulated scheme for collateral review, rather than invoke compassionate release to end-run its limits. Thus, even if procedural hurdles would now prevent Jenkins from raising his sentencing argument in collateral proceedings, we cannot treat such a bar on relief under section 2255 as supporting a finding of extraordinary and compelling circumstances."); *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023) ("[A] prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence; such arguments can, and hence must, be raised under Chapter 153 [of Title 28, addressing habeas corpus]."); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) ("[A defendant] cannot avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead.") (citing *United States v. Hunter*, 12 F.4th 555, 567 (6th Cir. 2021)).

[81] *United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023).

[82] *See, e.g.*, *United States v. Morris*, No. 13-125, 2022 WL 1213960 (W.D. Pa. Apr. 25, 2022) (rejecting arguments presented in compassionate release motion that § 2K2.1(b)(6)(B) enhancement should not have applied); *United States v. Williams*, No. 02-172-7, 2023 WL 4753777 (E.D. Pa. July 26, 2023) (declining to consider challenge to § 924(c) count); *United States v. Griffin*, No. 07-374-2, 2023 WL 4208673 (E.D. Pa. June 27, 2023) (rejecting argument that conviction for aggravated assault is no longer categorically "violent" for purposes of determining career offender status).

sentencing hearing be unsealed. He argues that unsealing the record would "allow [him] the opportunity to get all info [he] need[s] . . . ."[83] As explained above, Malloy may not challenge alleged sentencing errors through a compassionate release motion under § 3582(c)(1)(A)(i). It is unclear why Malloy would need access to his sentencing transcripts to support his arguments for compassionate release—at least with respect to issues he could appropriately raise, such as new information about his health concerns. The government opposes the motion, citing the need to protect witnesses who testified at trial. Given the government's legitimate objections, and the absence of reasons to support unsealing, the Court will deny Malloy's motion.[84]

## IV.  CONCLUSION

For the stated reasons, Malloy's motion for reconsideration, second motion for compassionate release, and motion to unseal transcripts will be denied. An order follows.

---

[83] Def.'s Pet. Unseal Tr. [Doc. No. 771].

[84] *See United States v. Orozco*, No. 08-140, 19-6279, 2023 WL 3289273 (E.D.N.Y. May 5, 2023) (denying motion to unseal documents in tandem with denial of compassionate release motion on the merits).